# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| LYNN PROKOP, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 09 CV 4323 |
| | ) | |
| | ) | Judge Ronald A. Guzman |
| v. | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| STONEMOR PARTNERS LP, | ) | |
| JASON WILSON, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Susan E. Cox, Magistrate Judge

Plaintiff Lynn Prokop has sued defendants StoneMor Partners LP ("StoneMor") and Jason Wilson, a StoneMor employee, for violations of Title VII of the Civil Rights Act of 1964, the Indiana Civil Rights Law, and Indiana common law. Plaintiff principally alleges that StoneMor sexually harassed her through its employee, Jason Wilson, while she was employed at StoneMor's cemetery in Indiana. Plaintiff further alleges that StoneMor retaliated against her for filing a report of sexual harassment by transferring her to a less desirable position at a cemetery in Illinois. StoneMor has moved to transfer venue to the Northern District of Indiana. For the reasons set forth herein, StoneMor's motion is DENIED [dkt 12].

## BACKGROUND

The following facts are taken from plaintiff's First Amended Complaint for Monetary Damages ("Complaint"). The Complaint contains 10 counts. Counts one through four allege that

StoneMor violated Title VII of the Civil Rights Act of 1964[1] by engaging in a hostile work environment, sexual harassment, quid pro quo, and retaliation. Counts five through nine allege that StoneMor committed the Indiana common law torts of false imprisonment, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence. The tenth count alleges that StoneMor violated the Indiana Civil Rights Law[2] by engaging in sexual harassment and retaliation.

StoneMor is a Pennsylvania company that operates cemeteries and funeral homes in 29 states, including Illinois and Indiana. StoneMor hired plaintiff in March 2008 to work at Cavalry Cemetery and Crematory ("Cavalry"), located in Portage, Indiana. Plaintiff is, however, a Chicago, Illinois resident. Plaintiff alleges that immediately upon starting work at Cavalry, she became the object of unwelcome sexual advances by her supervisor, Jason Wilson ("Wilson"). In May 2008, Wilson allegedly confined plaintiff in the cemetery and attempted to engage her in a game of strip tease. During the incident, Wilson allegedly touched plaintiff's left breast. In her Complaint, plaintiff lists several other instances of inappropriate conduct by Wilson during her eight-month employment at Cavalry, including inappropriate sexual touching, sexually explicit comments, and sexually explicit text messages sent by him to her cell phone.

On August 27, 2008, plaintiff reported the harassment to StoneMor. StoneMor commenced an investigation and concluded that plaintiff would no longer report to Wilson. In September 2008, StoneMor transferred plaintiff to Woodlawn Memorial Park ("Woodlawn"), a cemetery located in Joliet, Illinois. According to plaintiff's Complaint, Woodlawn employs more sales associates than

---

[1] 42 U.S.C. §§ 2000e-1, 2000e-17.
[2] IND. CODE § 22-9-1 (West, Westlaw through end of 2009 1st Special Sess.).

Cavalry, thus, plaintiff faced more competition for clients. Consequently, plaintiff's income dropped from $1,000 a week to $240 a week. Plantiff believes StoneMor transferred her to this "inferior position" in retaliation for her filing a report of sexual harassment. In addition, plaintiff alleges that she felt humiliated at work because her co-workers seemed to know the details of the alleged sexual harassment. Plaintiff contends that, as a result of defendants' actions, she developed Post Traumatic Stress Disorder ("PTSD"). In October 2008, plaintiff began attending weekly mental health sessions.

On February 17, 2009, plaintiff filed a complaint against StoneMor with the Equal Employment Opportunity Commission ("EEOC") in Indianapolis, Indiana. Also in February 2009, plaintiff asked for and received a leave of absence from StoneMor. However, plaintiff alleges that StoneMor declined to pay her salary or medical insurance premiums, in violation of the Family Medical Leave Act ("FMLA"),[3] as further retaliation for her filing a complaint of sexual discrimination with the EEOC. On July 20, 2009, plaintiff filed the instant action.

## ANALYSIS

StoneMor has moved to transfer this case to the Northern District of Indiana on the grounds that the material events giving rise to plaintiff's cause of action occurred in Indiana, the fact witnesses are in Indiana, and the Northern District of Indiana has more familiarity with the applicable Indiana law. Plaintiff counters that venue is appropriate in Illinois because two of the three parties reside in Illinois and the witnesses to the material events reside primarily in Illinois. The Court finds that StoneMor has failed to carry its burden of showing that Indiana is clearly the more convenient forum.

As a preliminary matter, the Court must address plaintiff's timeliness objection. Plaintiff

---

[3] 29 U.S.C. §§ 2601, 2654.

argues that StoneMor failed to file its motion to transfer in a timely manner. In support, plaintiff's counsel notes that he informed StoneMor of his intent to file a lawsuit in the Northern District of Illinois on March 30, 2009 and that StoneMor failed to inform him of its intent to transfer before filing the instant motion on September 22, 2009. Plaintiff concedes, however, that StoneMor was under no obligation to raise venue as an issue prior to the filing of a lawsuit. Although section 1404(a) does not address timeliness, courts have held that a party should act with reasonable promptness in moving to transfer venue.[4] The mere passage of time or a delay, however, is not alone sufficient to deny a motion to transfer where the moving party has acted in good faith.[5] StoneMor filed the instant motion 64 days after the commencement of this lawsuit. This is a reasonable amount of time in which to bring a motion to transfer.[6] Because there is no evidence of unreasonable delay here, there is no reason to consider the timeliness of StoneMor's motion to transfer venue in deciding whether a transfer is appropriate.

Turning to the merits of StoneMor's Motion to Transfer Venue, Title 28 of the United States Code Section 1404(a) permits a district court to transfer any civil action to any other district or division where it might have been brought for the convenience of the parties and witnesses and in the interest of justice. A transfer is appropriate under section 1404(a) when the following statutory elements are met: (1) venue is proper both in this court and in the transferee court; (2) the transferee court is more convenient for both the parties and the witnesses; and (3) a transfer would serve the interest of justice.[7] In ruling on a motion to transfer venue, the court must accept as true the well-

---

[4] *See, e.g., Black & Decker (U.S.), Inc. v. Sunbeam Corp.*, No. 93 C 4695, 1994 WL 865386 at *2 (N.D.Ill. Feb. 2, 1994).
[5] *See id.*
[6] *See id.* (holding that 60 days after the commencement of a lawsuit was a reasonable amount of time in which to bring a motion to transfer).
[7] *Boyd v. Snyder,* 44 F.Supp.2d 966, 968 (N.D.Ill.1999).

pleaded facts contained in the plaintiff's complaint, unless they conflict with affidavits or other appropriate evidence submitted by the defendant.[8] The movant bears the burden of showing that the transferee court is clearly the more convenient court.[9]

I

The threshold issue the Court must address is whether venue is proper in both the Northern District of Illinois and the Northern District of Indiana.[10] Under Title VII, venue is appropriate in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, or if the respondent is not found within any such district, in the judicial district in which the respondent has its principal office.[11] Plaintiff has alleged that StoneMor engaged in unlawful employment practices in both Indiana and Illinois. StoneMor concedes that venue is proper in either state.[12] Thus, the first element of section 1404(a) is satisfied.

II

The second element the Court must consider in deciding whether to grant a motion to transfer is the convenience and fairness of a transfer of venue.[13] To determine convenience, courts generally apply a five-pronged analysis that looks at the plaintiff's choice of forum, the situs of material

---

[8] *J & L Mgmt. Corp. of Ohio v. Arcelormittal Wierton, Inc.*, No. 08 C 4749, 2008 WL 5082980 at *1 (N.D.Ill. Nov. 25, 2008).
[9] *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986).
[10] *Boyd,* 44 F.Supp.2d at 968.
[11] 42 U.S.C. § 2000e-5(f)(3).
[12] *Mem. in Supp. of Mot. to Transf.* at 3.
[13] *Boyd,* 44 F.Supp.2d at 968.

events, the relative ease of access to sources of proof, the convenience of the parties, and the convenience of the witnesses.[14] The moving party must demonstrate that the balance of the factors weighs heavily in favor of transfer and that the transfer would not merely shift inconvenience from one party to another.[15]

## A. Plaintiff's Choice of Forum

The first of those factors is plaintiff's choice of forum. Plaintiff is a Chicago resident who has brought suit in her home forum. StoneMor argues that the Court should not assign any special weight to this factor because Illinois has "virtually no connection to this lawsuit," other than the fact that plaintiff lives in Illinois. StoneMor argues that plaintiff has engaged in "forum shopping" because she filed her initial EEOC complaint in Indiana and because she admits to having researched the differences between Indiana and Illinois tort law before filing her state law claims.

A plaintiff's choice of forum is generally given substantial weight, particularly when the plaintiff brings the action in the judicial district where he or she resides.[16] However, a plaintiff's choice of forum is entitled to less weight when the forum lacks any significant contact with the plaintiff's underlying cause of action.[17] But StoneMor's assertion that Illinois has "virtually no connection to this lawsuit," other than the fact that plaintiff lives in Illinois, is not supported by the facts contained in the Complaint. Not only does plaintiff live in Illinois, she also worked at StoneMor's Joliet location for five months (before taking a leave of absence). Although StoneMor portrays this period of time as "very brief," five months is a significant amount of time considering

---

[14] *Morton Grove Pharm., Inc. v. Nat'l Pediculosis Ass'n, Inc.*, 525 F.Supp.2d 1039, 1044 (N.D.Ill. 2007).
[15] *Id.* (citing *Fink v. Declassis*, 738 F.Supp. 1195, 1198 (N.D.Ill. 1990)).
[16] *Vandeveld v. Christoph*, 877 F.Supp. 1160, 1167 (N.D.Ill 1995) ("Indeed, a plaintiff's choice of forum should rarely be disturbed unless the balance weighs strongly in the defendant's favor.").
[17] *Envtl. Serv., Inc. v. Bell Lumber and Pole Co.*, 607 F.Supp. 851, 853 (N.D.Ill. 1984).

plaintiff only worked at StoneMor's Indiana location for eight months. Moreover, plaintiff has alleged that StoneMor retaliated against her in Illinois by declining to pay her salary and medical benefits during her leave of absence. Thus, at least some of the material events alleged in the Complaint occurred in Illinois.

The Court is also unpersuaded by StoneMor's argument that plaintiff has engaged in "blatant forum shopping." StoneMor cites no authority to show that where a plaintiff files her EEOC complaint is relevant to the section 1404(a) analysis. The same applies to StoneMor's arguments regarding plaintiff's choice of law. The analysis of which court is best-suited to hear a plaintiff's state law claims is relevant not to the convenience prong of the section 1404(a) analysis but rather to the "interest of justice" prong, which the Court will address below.[18] Although the majority of material events giving rise to plaintiff's cause of action occurred in Indiana, a sufficient portion also occurred in Illinois. Thus, plaintiff's choice of forum is entitled to substantial weight.

### B. The Situs of Material Events

In determining which forum is more convenient, the courts must also consider the situs of material events.[19] StoneMor argues that the material events allegedly giving rise to plaintiff's cause of action occurred in Indiana. Plaintiff argues that most of the material events occurred in Illinois because that is where she allegedly received Wilson's text messages and because that is where StoneMor retaliated against her, first by transferring her to an inferior position and then by denying her salary and medical benefits during a leave of absence.

The Court agrees with StoneMor that the majority of material events occurred in Indiana.

---

[18] *See Coffey*, 796 F.2d at 221 (stating that factors traditionally considered in the "interest of justice" analysis include a forum's familiarity with the applicable state law.)
[19] *Morton Grove Pharm., Inc.*, 525 F.Supp.2d at 1044.

According to the Complaint, Wilson repeatedly engaged in sexual advances towards plaintiff during normal work hours at Cavalry. The parties go back and forth as to the significance of the allegedly offensive text messages, which StoneMor argues originated in Indiana but plaintiff says she received in Illinois. Neither party has cited any legal authority, however, that would assist the Court in determining the significance of the origin of the text messages or the location of their receipt in analyzing a motion to transfer. Moreover, StoneMor's first alleged retaliatory act – the decision to transfer plaintiff to an inferior position – would also have occurred in Indiana or at StoneMor's Pennsylvania headquarters. So only StoneMor's second alleged retaliatory act, denying plaintiff salary and medical benefits, occurred exclusively in Illinois. Thus, this factor arguably weighs in favor of transfer.

### C. Relative Ease of Access to Sources of Proof

The Court, in addition, considers the relative ease of access to proof when assessing convenience.[20] When documents are easily accessible, access to proof is a neutral factor.[21] StoneMor concedes that the documentary proof in this case is located in Pennsylvania, Indiana, and Illinois and could easily be transferred to another jurisdiction via fax, email, and overnight courier. Thus, the ease of access to sources of proof is neutral.

### D. Convenience of the Parties

In determining whether to grant a motion to transfer, a court must also consider the convenience of the parties.[22] Plaintiff and Wilson both reside in the forum. StoneMor resides in Pennsylvania, thus, venue is no more convenient for StoneMor in Indiana than in Illinois.

---

[20] *Morton Grove Pharm.*, 525 F.Supp.2d at 1044.

[21] *Leuders v. 3M Co.*, No. 08 C 2457, 2008 WL 2705444 at *3 (N.D.Ill. July 9, 2008) (citing *First Nat'l Bank v. El Camino Resources Ltd.*, 447 F.Supp.2d 902, 913 (N.D.Ill. 2006)).

[22] *Morton Grove Pharm.*, 525 F.Supp.2d at 1044.

Additionally, plaintiff's counsel argues that a transfer of venue to the Northern District of Indiana would inconvenience him. This is odd given that counsel's office is located in Merrillville, Indiana, a mere 20 miles from Hammond. The location of counsel is not, however, a relevant factor in the section 1404(a) analysis.[23] Either way, this factor weighs against transfer.

## D. Convenience of the Witnesses

The final factor the court must consider in deciding the convenience of a transfer is the convenience of the witnesses. StoneMor argues that because the alleged operative events in this matter occurred in Indiana and not Illinois, the fact witnesses are primarily located in Illinois. Plaintiff has disclosed the names of 29 potential witnesses (although plaintiff's Rule 26 disclosures list 31 names, two witnesses are named twice). Four of the witnesses are StoneMor employees residing in Indiana, one witness is a StoneMor employee residing in Pennsylvania, and the remaining 24 witnesses are StoneMor employees, doctors, and unspecified witnesses residing in Illinois. StoneMor includes with its motion an affidavit from its human resources manager verifying that 9 of the plaintiff's 29 witnesses are StoneMor employees.

A party moving for transfer must identify the key witnesses to be called and provide a generalized statement of what their testimony would say.[24] In deciding whether one venue is more convenient than another, a court should not limit its inquiry to the length of the parties' respective witness lists but rather it should examine the nature and quality of the testimony in light of the issues in the case.[25] A court should focus more on the convenience of non-party witnesses than on the convenience of witnesses under the control of the parties, such as employees, because it is generally

---

[23] *S.E.C. v. Kasirer*, No. 04 C 4340, 2005 WL 645246 (N.D.Ill. March 21, 2005).
[24] *Vandeveld,* 877 F.Supp. at 1167 (citing *Heller Financial, Inc. V. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989)).
[25] *Id.* at 1168.

assumed that the latter will appear voluntarily.[26]

StoneMor has neglected to identify its key witnesses or provide a generalized statement of what their testimony would say. Instead, StoneMor states matter-of-factly that because the situs of material events in this case is Indiana, the key fact witnesses are necessarily located in Indiana. But we already determined, above, that the situs of material events in this case is not limited to one location. StoneMor also attaches to their motion an affidavit verifying that 9 of plaintiff's 29 witnesses are StoneMor employees. The Court notes that the affidavit states nothing, however, about where these employees live. According to plaintiff's Rule 26 disclosures, five of the nine StoneMor employees named in the affidavit reside in Illinois. Principally, StoneMor overlooks the fact that Wilson, an employee at its Indiana location, is actually a resident of Illinois. Finally, the convenience of StoneMor's employees is entitled only to a little weight because they are presumed to be under StoneMor's control.[27] Plaintiff, on the other hand, has named 19 non-party witnesses residing in Illinois, at least two of which are mental health therapists with whom she regularly meets and who she says will be important to proving her PTSD. Lastly, the distance between the Northern District of Illinois and the Northern District of Indiana is only 22 miles. Any inconvenience for Indiana witnesses is slight. Thus, this factor is neutral.

### III

We next move to the final issue to be addressed when deciding whether to grant a motion to transfer venue, which is whether the transfer would be in the interests of justice.[28] StoneMor argues that this case should be transferred to the Northern District of Indiana because the Indiana

---

[26] *Dillon v. Watson Bowman Acme Corp.*, No. 02 C 9289, 2003 WL 22454024 at * 2 (N.D.Ill. Oct. 27, 2003) (citing *College Craft Co., Ltd. v. Perry*, 889 F.Supp. 1052, 1055 (N.D.Ill.1995)).
[27] *See Dillon*, 2003 WL 2245024 at *2.
[28] *Boyd,* 44 F.Supp.2d at 968.

courts will have more familiarity with plaintiff's state law claims. StoneMor also argues that Indiana has a stronger interest than Illinois in resolving this dispute because the underlying events occurred in Indiana. Plaintiff counters that the federal courts in Indiana will be no more familiar with the applicable Indiana law than the Northern District of Illinois. Plaintiff further argues that the Indiana claims are "less significant" than plaintiff's Title VII claims. Finally, plaintiff maintains that the majority of the behavior giving rise to the events occurred in Illinois.

The "interests of justice" prong of the section 1404(a) analysis is concerned with the efficient administration of justice and not with the underlying merits of the case.[29] Factors relevant to this inquiry include the speed with which the case will proceed to trial, the court's familiarity with the applicable law, and the relationship of the communities to the litigation.[30]

We will not address the speed with which this case will proceed to trial because neither party has raised it. We will, however, consider the other two factors. First, StoneMor argues that the Indiana courts are in a better position to adjudicate this matter because plaintiff has alleged four violations of Indiana common law torts and one violation of the Indiana Civil Rights Law,[31] in addition to her Title VII claims. Though we acknowledge that the interest of justice is best served when the federal judge trying the case is familiar with the applicable law,[32] "where the law in question is neither complex nor unsettled, the interests of justice remain neutral between competing courts."[33] It should be noted that the district judge in this case has previously observed that "tort law

---

[29] *Morton Grove Pharm.*, 525 F.Supp.2d at 1045 (citing *Coffey*, 796 F.2d at 221).
[30] *First Nat'l Bank v. El Camino Resources, Ltd.*, 447 F.Supp.2d 902, 913-14 (N.D.Ill. 2006).
[31] IND. CODE § 22-9-1 (West, Westlaw through end of 2009 1st Special Sess.).
[32] *Coffey*, 796 F.2d at 221.
[33] *First Nat'l Bank*, 447 F.Supp.2d at 914 (quoting *Sitrick v. FreeHand Sys., Inc.*, No. 02 C 1568, 2003 WL 1581741 at *5 (N.D.Ill. Mar. 27, 2003)).

is not extraordinarily complex," but it may still weigh in favor of a transfer.[34] We, thus, find that because Indiana will have more familiarity with the applicable Indiana tort law and with the Indiana Civil Rights Law than will this Court, this factor favors transfer.

Turning to the final factor, which is the relationship of the communities to the litigation, StoneMor repeats its argument that because Indiana is the forum with the strongest ties to this litigation, the interests of justice would be served by transferring this case to Indiana. Though we acknowledge that Indiana is where the events of this case began, as we have already stated, Illinois also has ties to this litigation because some of the material events occurred here, and because plaintiff resides here. StoneMor also offers no arguments as to how a transfer would serve the Indiana community. Accordingly, this factor is neutral.

## CONCLUSION

In sum, only two of the many factors courts consider in the section 1404(a) analysis weigh in favor of a transfer in this case: the situs of material events and the familiarity of the court with the applicable law. We acknowledge StoneMor's argument that because Indiana is where the material events in this case began, Indiana is the forum with more ties to this case. We also recognize that the Indiana courts will be more familiar with the applicable Indiana laws. However, these factors are counterbalanced by the fact that plaintiff has chosen to sue in her home forum, which is Illinois, and that two of the three parties to this case reside in Illinois. StoneMor has, therefore, failed to carry its burden of showing that the Northern District of Indiana is clearly the more convenient forum and its Motion to Transfer Venue is denied [dkt 12].

---

[34] *See Toriumi v. Ritz-Carlton Hotel Co., L.L.C.*, No. 06 C 1720, 2006 WL 3095753 at *3 (N.D.Ill. October 27, 2006).

**IT IS SO ORDERED.**

Date: November 9, 2009                                   _____
                                                         U.S. Magistrate Judge
                                                         Susan E. Cox